**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TONY RAY KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:17-CV-742 CAS |
| | ) | |
| GEORGE LOMBARDI, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff, a prisoner, seeks leave to proceed in forma pauperis in this civil action under 42 U.S.C. § 1983. Having reviewed plaintiff's financial information, the Court assesses a partial initial filing fee of $42.80, which is twenty percent of his average monthly deposit. See 28 U.S.C. § 1915(b). Additionally, several of the defendants will be dismissed.

### Standard of Review

Under 28 U.S.C. § 1915(e), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." Id. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Determining whether a complaint states a plausible claim for relief is a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense. Id. at 679.

When reviewing a complaint under 28 U.S.C. § 1915(e), the Court accepts the well-pled facts as true. Furthermore, the Court liberally construes the allegations.

## Background

On January 10, 2012, plaintiff strangled his son to death. Missouri v. King, 453 S.W.3d 363, 367 (Mo. Ct. App. 2015). The following day, he set fire to his mobile home to conceal the murder. Id. On May 2, 2013, a jury convicted him of first-degree murder, second-degree arson, and child abuse. Missouri v. King, No. 12BU-CR01087 (5th Judicial Cir.). On July 12, 2013, the court sentenced him to life without the possibility of parole for the murder and two fifteen-year prison sentences for the abuse and arson counts, all to be served consecutively. Id. The Missouri Court of Appeals affirmed. King, 453 S.W.3d at 367.

On June 11, 2013, while he was awaiting trial on the charges of killing his son, he killed his cellmate. Cmpl.'s at 14. On September 26, 2013, he pled guilty to second-degree murder. Missouri v. King, No. 13BU-CR01387-01 (5th Judicial Cir.). On October 31, 2013, the court sentenced him to twenty years' imprisonment, to be served consecutive to the previous sentence.

After he was delivered to the Missouri Department of Corrections ("MoDOC"), he was eventually transferred to the Eastern Reception Diagnostic and Correctional Center ("ERDCC"). When he first arrived, he was placed in the general population. During his time in the general population, he did not receive any conduct violations.

After he was convicted of killing his son, officials at ERDCC placed him in administrative segregation. He was given several confusing answers with regard to his

placement, until he was told that the placement was due to the fact that he killed his cellmate in the county jail.

Plaintiff protested. He told defendants that they could not place him in administrative segregation for a murder he committed before his entry into a MoDOC facility.

Defendants Dave Dormire, the Director of Adult Institutions, and Terry Russell, the former Warden of ERDCC, were responsible for his long-term placement in administrative segregation, which ultimately lasted 923 days. The other defendants involved in the placement either carried out Dormire's and Russell's orders or denied his grievances on the subject.

While confined in administrative segregation, plaintiff was not allowed to attend religious services or have contact visits, and he was only allowed one fifteen-minute phone call per month.

Defendant Dale Phillips refused to provide plaintiff with adequate hygiene items while he was in administrative segregation, which resulted in his skin cracking and bleeding. Plaintiff asked defendant Terry Taylor, who is a nurse, for something to treat his skin. Taylor refused. After he complained, defendant Todd Renshaw ordered Taylor to provide him with skin ointment. Taylor and other defendants denied his grievances on the matter because he was provided with the ointment.

On April 28, 2016, after meeting with mental health staff, plaintiff was assigned to the general population. He did not get a bed, however, until May 16, 2016.

In June 2016, plaintiff requested a food visit. Defendant Brad Rentfro denied the request because, under MoDOC's policies, offenders may not have food visits within six months of their release from administrative segregation. Pl.'s Ex. 10 at 2. Additionally, although he was placed on incentive status when he got to general population, it was subsequently removed because, inmates must not have had any "[disciplinary segregation] or [administrative segregation]

assignments within the last 24 months." *Id.* at 23. Plaintiff insists, however, that defendant Matthew Pultz removed him from incentive status in retaliation for having filed an Informal Resolution Request ("IRR").

Additionally, plaintiff maintains that he was exempt from the policy, which further says, "Exception: Unfounded investigations and administrative protective custody placements." *Id.* Plaintiff believes he was eligible for the exception.

## Discussion

For the Due Process Clause to be implicated, an inmate subjected to segregation must have been subjected to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472 (1995). The Court finds that plaintiff has shown that his continued segregation for 923 days implicates a liberty interest and that plaintiff stated a due process claim. See Kelly v. Brewer, 525 F.2d 394, 399-400 (8th Cir. 1975) (where inmate is held in administrative segregation for prolonged or indefinite period, due process requires that his situation be reviewed periodically in meaningful way; administrative segregation is not punitive, it looks to present and future rather than to past, and it involves exercise of administrative judgment and prediction of what inmate will probably do or have done to him if he is permitted to return to population after period of segregation; reason for segregation must not only be valid at outset but must continue to subsist during period of segregation). As a result, the Court will order the Clerk to serve process on defendants Russell and Dormire.

The Court also finds that plaintiff's claims that he was not allowed to attend religious services, was only allowed one fifteen-minute phone call per month, and was not allowed contact visits during the time he was in administrative segregation implicate a liberty interest.

The Court finds plaintiff's argument that his initial placement in administrative segregation was unconstitutional to be frivolous. An inmate that recently murdered a cellmate poses a threat to other inmates and the security of the institution. The institution, therefore, may reasonably place such an inmate in segregation. Therefore, the complaint fails to state a plausible claim for relief against the defendants who initially placed him in administrative segregation.

The Court finds that plaintiff's medical mistreatment claim against Taylor is plausible. Consequently, the Court will require Taylor to respond to the complaint. Plaintiff's claim against Renshaw, however, is frivolous. Renshaw directed Taylor to provide him with ointment, and he denied his grievance. Denying a grievance is not an actionable claim under § 1983. See, e.g., George v. Smith, 507 F. 3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the [constitutional] violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation."). Moreover, the Court will dismiss defendant Corizon because plaintiff has not alleged that its official policy led to the denial of medical care. See Sanders v. Sears Roebuck & Co., 984 F.2d 972, 95-76 (8th Cir. 1993).

The Court will also order the Clerk to issue process on defendant Phillips because inmates are entitled to adequate hygiene supplies. See Myers v. Hundley, 101 F.3d 542, 544 (8th Cir. 1996) ("[A] long-term, repeated deprivation of adequate hygiene supplies violates inmates' Eighth Amendment rights.").

The Court does not believe that plaintiff's retaliation claim against Pultz is plausible. To succeed on his § 1983 retaliation claim, plaintiff must prove that he engaged in protected activity and that defendants, to retaliate for the protected activity, took adverse action against plaintiff

that would chill a person of ordinary firmness from engaging in that activity. See Revels v. Vincenz, 382 F.3d 870, 876 (8th Cir. 2004), cert. denied, 546 U.S. 860 (2005). Vital to plaintiff's claim is that he was exempt from the requirement that inmates may not be placed on incentive status for two years after their release from administrative segregation. Plaintiff, however, misinterprets the exemption, which again says, "Exception: Unfounded investigations and administrative protective custody placements." Plaintiff was not placed in administrative segregation because of an unfounded investigation or because he was in protected custody. He was in administrative segregation because he murdered his cellmate at the Buchanan County Jail and posed a threat to other inmates. He was not eligible for incentive status. Therefore, it follows that Pultz did not take an adverse action against him but merely followed the institution's policies. The Court will dismiss Pultz from this action.

Plaintiff's claim that he was denied food visits is legally frivolous because it does not rise to the level of a constitutional violation. Therefore, the Court will dismiss defendant Rentfro from this action.

Finally, plaintiff's claims against the remaining defendants are that they denied his grievances, which as is stated above, does not state a claim for relief under § 1983. Therefore, they will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis is **GRANTED**. [Doc. 2]

**IT IS FURTHER ORDERED** that the plaintiff must pay an initial filing fee of $42.80 within twenty-one (21) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name;

(2) his prison registration number; (3) the case number; and (4) that the remittance is for an original proceeding.[1]

**IT IS FURTHER ORDERED** that the Clerk is directed to serve process on defendants Terry Russell, Dale Phillips, Dave Dormire, and Terry Taylor. Russell, Phillips, and Dormire are or were employed by MoDOC. Taylor was or is employed by Corizon.

**IT IS FURTHER ORDERED** that defendants Corizon, Troy Steele, Joe Hoffmeister, Stan Jackson, Terry Lawson, Matthew Pultz, George Lombardi, Dwayne Kemper, J. Cofield, T. Bredeman, Kathy Barton, Unknown Duberstein, Todd Renshaw, K. Moore, and Brad Rentfro are **DISMISSED** without prejudice.

An Order of Partial Dismissal will be filed forthwith.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this <u>25th</u> day of May, 2017.

---

[1] Prisoners must pay the full amount of the $350 filing fee. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner will deduct the payments and forward them to the Court each time the amount in the account exceeds $10. 28 U.S.C. § 1915(b)(2).