# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| TONY RAY KING, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:17-CV-742 CAS |
| ) | |
| GEORGE LOMBARDI, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on defendants Dave Dormire, Terry Russell, and Troy Steele's motion to dismiss, and defendant Dale Phillips's separate motion to dismiss, both of which are filed pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes the motions and filed response memoranda. The motions are fully briefed and ripe for review. For the following reasons, the Court will deny defendants' motions.

### *I. Background*

Plaintiff Tony Ray King is a prisoner residing at the Eastern Reception Diagnostic and Correctional Center ("ERDCC") in Bonne Terre, Missouri. In his First Amended Complaint, plaintiff brings claims against Dave Dormire, the Director of Adult Institutions for Missouri Department of Corrections ("MDOC"); Dale Phillips, a Function Unit Manager at ERDCC, Terry Russell, warden of ERDCC until February or March 2015; Troy Steele, warden at ERDCC since February or March 2015; and Terry Taylor, a nurse for Corizon, LLC, who worked at ERDCC. All defendants are sued in their individual and official capacities. Plaintiff brings two counts in his First Amended Complaint pursuant to 42 U.S.C. § 1983: (1) deprivation of due process rights guaranteed by the United States Constitution, against defendants Dormire, Russell, and Steele (Count I); and

(2) deprivation of constitutional right to be free of cruel and unusual punishment, against defendants Phillips and Taylor (Count II). For relief, plaintiff is asking for a declaration that defendants violated his Constitutional rights, compensatory damages, and punitive damages.

Defendant Terry Taylor answered the First Amended Complaint. Defendants Dormire, Russell, and Steele responded by filing a motion to dismiss. In their motion to dismiss, these defendants argue that plaintiff fails to state a claim against them because he did not exhaust his administrative remedies. Defendant Phillips filed a separate motion to dismiss also on the grounds that plaintiff failed to exhaust his administrative remedies as to the claim against him.

## *II. Allegations*

Plaintiff alleges in his First Amended Complaint that he was held in administrative segregation at ERDCC for 923 consecutive days, from November 5, 2013, to May 16, 2016, the majority of which was in single cell confinement. During his time in administrative confinement, he alleges that he was deprived of privileges allowed to prisoners in the general population, such as attending religious services, contact visits, and telephone calls. He also alleges that he was denied adequate hygiene supplies. Plaintiff further alleges that there was no reason to hold him in administrative segregation because he only had one minor conduct violation in two and half years, and he was not given any meaningful opportunity to challenge his continued confinement in administrative segregation.

According to the First Amended Complaint, on May 2, 2013, plaintiff was convicted of first degree murder for killing his son. On June 11, 2013, while awaiting sentencing for the conviction, plaintiff killed his cellmate in the Buchanan County Jail. Plaintiff alleges that when he first arrived at ERDCC on September 17, 2013, he was given an initial classification hearing and placed in the

general population. According to the First Amended Complaint, he stayed in the general population until October 29, 2013, when he left to be sentenced for killing his cellmate in the Buchanan County Jail. Upon arriving back at ERDCC on November 5, 2013, he was placed in single cell administrative segregation. He alleges this assignment came from the warden's office. He remained in single cell administrative segregation for 785 days.

Plaintiff alleges in his First Amended Complaint that he did attend administrative segregation review hearings, but despite being told by mental health staff that there was no reason he should be kept in administrative segregation, he continued to be held there. Plaintiff also alleges that he should not have been held in administrative segregation because he had only one minor conduct violation and no "unwaived enemies." Plaintiff further alleges that defendants Russell, Dormire, and later Steele approved of his placement in long-term segregation.

On March 7, 2014, plaintiff submitted an IRR challenging his placement and continued stay in single-cell administrative segregation. A copy of the IRR is attached to the First Amended Complaint as Exhibit 5. Plaintiff explained in his IRR that as a result of his placement in administrative segregation, he had lost the benefits of a general population inmate. Plaintiff's IRR was denied. On March 25, 2014, plaintiff submitted an Offender Grievance that generally raised the same issues raised in his IRR, a copy of which is attached to the First Amended Complaint as Exhibit 6. Plaintiff complained that he had been assigned to single-cell administrative segregation, and that he did not have the same benefits as the general population. Plaintiff's March 25, 2014 Offender Grievance was denied on May 2, 2014. Plaintiff submitted an Offender Grievance Appeal on May 12, 2014, copy of which is attached to the First Amended Complaint as Exhibit 7. In his appeal, plaintiff requested that he be placed in general population or given additional privileges.

Plaintiff noted that he had not received any conduct violations at ERDCC, and there had been no issues when he was in ERDCC general population from September 16, 2013, through October 28, 2013. Id. Plaintiff's appeal was denied on June 23, 2014.

According to the First Amended Complaint, defendant Dormire issued an order on December 29, 2015, stating that plaintiff could be moved to a double cell, and after 120-180 days in double-cell administrative segregation, his case could be reviewed for a possible release to general population. On December 30, 2015, plaintiff was notified, after 785 days in single-cell administrative segregation, that he would be moved to a double cell in the administrative segregation unit. Plaintiff alleges that despite continuing to have good behavior, he was not released to the general population until May 16, 2016.

While he was in administrative segregation, plaintiff alleges that defendants Phillips and Taylor failed to provided him with proper hygiene supplies and adequate medical care. He alleges that during his confinement he did not have adequate hygiene supplies and developed such dry skin that his hands became cracked and bloodied. He alleges that this created a serious medical situation because his cellmate was infected with Hepatitis C. He alleges that written requests to defendant Phillips for hygiene supplies to treat his skin condition were ignored. According to the First Amended Complaint, on January 20, 2016, plaintiff consulted with defendant Taylor about his hands and wrists, and the nurse informed him that the DOC does not treat dry skin.

On February 4, 2016, plaintiff submitted an IRR regarding defendant Taylor's failure to treat his cracked and bloodied skin, and his inability to obtain creams or lotions while in administrative segregation. A copy of the IRR is attached as Exhibit 20 to plaintiff's First Amended Complaint. ERDCC denied plaintiff's IRR.

After the denial of his IRR, plaintiff filed an Offender Grievance on April 2, 2016, in which he reiterated his complaint about defendant Taylor's failure to adequately treat his skin condition. Plaintiff also complained that a policy in administrative segregation prevented him from purchasing skin care products. A copy of the April 2 Offender Grievance is attached as Exhibit 21 to the First Amended Complaint. Plaintiff requested that he be allowed to purchase hygiene supplies, and that Taylor receive a reprimand. After the grievance was denied, plaintiff filed an Offender Grievance Appeal, which was also denied.

In January or February 2016, plaintiff also submitted a Health Service Request because he had developed a rash on his stomach that he believed to be ringworm. Plaintiff alleges that he developed this rash due to the unsanitary conditions in ERDCC's administrative segregation unit. According to plaintiff, defendant Taylor informed plaintiff that his rash was a "cosmetic fungus" that ERDCC would not treat. Plaintiff alleges that the rash spread to his stomach, legs, back, eyelids, and groin. According to the First Amended Complaint, defendant Taylor continued to refuse to treat the spreading rash. Plaintiff alleges that he did not receive treatment for the rash, which was ringworm, until he was released to the general population in May 2016.

On September 16, 2016, plaintiff submitted an IRR regarding defendant Taylor's failure to adequately diagnose or treat his rash, a copy of which is attached as Exhibit 23 to the First Amended Complaint. In this IRR, plaintiff requested that he be "given adequate treatment and a personal apology" for his mistreatment. Plaintiff alleges that he was given a limited supply of oral antifungal mediation, but the IRR was otherwise denied. After the denial of his IRR, plaintiff filed an Offender Grievance on November 22, 2016, in which he expressed his concerns about defendant Taylor's failure to treat his rash. Doc. 25, Ex. 24. After his grievance was denied, plaintiff filed an Offender

Grievance Appeal, which was denied on March 24, 2017. Doc. 25, Ex. 25. Plaintiff alleges that he was not properly treatment for ringworm until the spring of 2017.

### III. Standard

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In the complaint, a plaintiff "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir.), cert. denied, 129 S. Ct. 222 (2008) (citing Twombly, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562 (quoted case omitted). This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." Id. at 556.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," Twombly, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Id; Fed. R. Civ. P. 8(a)(2). Materials attached to the complaint as exhibits may

be considered in construing the sufficiency of the complaint. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).

## *IV. Discussion*

In their motions to dismiss, defendants argue that plaintiff did not administratively exhaust his claims against them. Defendants Dormire, Russell, and Steele argue that plaintiff only exhausted his administrative remedies with respect to his initial placement in administrative segregation – a claim which was found to be frivolous in the Court's initial review. They argue that plaintiff has not exhausted his administrative remedies with regard to his long-term assignment to administrative segregation, the denial of meaningful opportunity to challenge his confinement, and the alleged denial of his ability to attend religious services. As for defendant Phillips, he argues in his motion that plaintiff failed to exhaust his administrative remedies regarding his alleged failure to provide plaintiff with hygiene products while in administrative segregation.

The Prison Litigation Reform Act ("PLRA") imposes an exhaustion requirement on state prisoners who wish to pursue a claim under § 1983. The PLRA provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is "mandatory" and unexhausted claims must be dismissed. Jones v. Bock, 549 U.S. 199, 211 (2007).

The Supreme Court has explained that to properly exhaust administrative remedies, a prisoner must complete the administrative review process in accordance with the procedural rules as defined by the applicable prison grievance process itself. Jones, 549 U.S. at 218-19. Compliance with prison grievance procedures is all that is required by the PLRA to properly exhaust. Id. The

Court noted that the level of detail necessary to comply with grievance procedures "will vary from system to system and claim to claim[.]" Id. at 218. See also Frazier v. Winfield, 252 F. App'x 117, 118 (8th Cir. 2007) (per curiam) ("The prison's requirements, not the PLRA, define the boundaries of proper exhaustion.")

Failure to exhaust "is an affirmative defense under the PLRA" and "inmates are not required to specifically plead or demonstrate exhaustion in their complaints." Jones, 549 U.S. at 216. "Defendants have the burden of raising and proving the absence of exhaustion." Porter v. Strum, 781 F.3d 448, 452 (8th Cir. 2015). Furthermore, while no unexhausted claim may be considered under the PLRA, a case should not be dismissed in its entirety because it contains unexhausted claims. Jones, 549 U.S. at 219. The unexhausted claims should be dismissed and the rest of the case proceed. Id.

Defendants did not provide the Court with any evidence regarding MDOC's grievance procedures. MDOC's grievance procedures have, to some extent, been discussed in Eighth Circuit case law. According to the Eighth Circuit, Missouri has developed a three-step procedure for inmates to internally grieve complaints against MDOC and its staff: informal resolution request, grievance, and grievance appeal. See Hammett v. Cofield, 681 F.3d 945, 948 (8th Cir 2012). After receiving the grievance appeal response, the inmate "has exhausted the grievance process." Id.

     **A.     Defendants Dormire, Russell, and Steele's Motion**

It is undisputed that plaintiff filed an IRR, a grievance, and a grievance appeal, in each of which he complained that he had been assigned to administrative segregation. Defendants Dormire, Russell, and Steele, however, argue that the IRR, grievance, and appeal relate only to plaintiff's

initial placement in administrative segregation, not his continued assignment there. The Court does not agree with this characterization.

First, the timing of the IRR, grievance, and appeal do not support defendants' argument that plaintiff has only exhausted claims relating to his initial placement in administrative segregation. Plaintiff's initial IRR regarding placement in administrative segregation was filed on March 7, 2014, four months after plaintiff was placed in administrative segregation, and while he continued to be held there. Second, it is clear from the language plaintiff used in his IRR, grievance, and grievance appeal that he was complaining not only about the fact that he was initially assigned to administrative segregation, but that he continued to be held there without adequate justification. Plaintiff complained that he continued to be held in administrative segregation even though he had not received violations or "been placed on any investigations." Doc. 25, Ex. 5. He complained that privileges continued to be withheld because he was still assigned to administrative segregation at the time he filed his IRR, his grievance, and his grievance appeal. It is plain that plaintiff raised not only the issue of his initial assignment to administrative segregation, but the fact that he continued to be held there without adequate justification.

Finally, defendants' argument that plaintiff only exhausted his initial assignment to administrative segregation is contrived, because in responding to plaintiff's grievance, MDOC addressed not only his initial assignment to administrative segregation, but his continued stay there, and the reasoning behind the continued assignment. In denying the grievance, the superintendent wrote:

> I am in receipt of your grievance dated 31 March 2014 regarding your assignment to Administrative Segregation on single cell confinement. . . . Be advised, you <u>are</u> appropriately assigned to Ad/Seg. I support the response issued at the Informal Resolution Request stage as it adequately addressed your complaint. I have

reviewed your Ad/Seg Committee hearings and approve of the justification and recommendations made by this committee.

Doc. 25, Ex. 6. (emphasis added). This response indicates that MDOC not only addressed plaintiff's initial placement in administrative segregation, but it also addressed on the merits plaintiff's continued placement there, as the response referred to hearings and the recommendations from the "Ad/Seg Committee" regarding the appropriateness of plaintiff's continued assignment there. "[A] grievance that could have been denied for failure to comply with a procedural requirement is nonetheless exhausted for PLRA purposes if the institutional decision-maker instead denied it on the merits." Hammett v. Cofield, 681 F.3d 945, 947 (8th Cir. 2012) (per curiam). Defendants' argument that plaintiff has only exhausted his claim with regard to his initial placement in administrative segregation is without merit.

As for plaintiff's supposed failure to administratively exhaust his claim that he was denied the opportunity to attend religious services, plaintiff has not brought a separate claim for violation of his First Amendment right to free exercise of religion. In his First Amended Complaint, plaintiff brings one count against defendants Dormire, Russell, and Steele for deprivation of his due process rights. He alleges that being held in long-term administrative segregation violated his due process rights under the Constitution and as a result he suffered harm because, among other things, privileges such as the ability to attend religious services were withheld because he was in administrative segregation. Plaintiff's allegation that he was unable to attend religious services is not a separate claim, but rather it is an allegation relating to the harm he suffered as a result of his long-term assignment to administrative segregation. Defendants have not shown, under MDOC policy or the law, that plaintiff was required to exhaust each and every alleged harm that flowed from his claim that he was improperly held in long-term segregation. The Court finds defendants

Dormire, Russell, and Steele's motion to dismiss for plaintiff's failure to exhaust his administrative remedies is without merit.

**B.     Defendant Phillips's Motion**

Defendant Phillips also argues in his motion to dismiss that plaintiff failed to exhaust his administrative remedies with regard to the claims against him. Defendant Phillips states in his memorandum in support that the "[t]he grievance documents plainly show that Plaintiff complained only about Nurse Terry Taylor and what Plaintiff believed was inadequate medical care. Plaintiff has not filed any grievances regarding hygiene supplies that were supposedly withheld by Defendant Phillips." Doc. 32 at 7. The Court does not agree.

On February 4, 2016, plaintiff filed an IRR in which he complained that he was being denied medical care by "Nurse Terry." Plaintiff explained in his IRR that he had "dry skin so bad that it was cracking and bleeding." Doc. 25, Ex. 20. Plaintiff further stated that he was being held in Administrative Segregation and that for two years he was given nothing for his skin. Plaintiff wrote, "house unit two policy keeps me from buy [sic] skin care products." Id. This IRR was denied, and plaintiff filed a grievance in which he wrote:

> I explained to Terry that I have been in ad-seg for over two years and that ad-seg policy prevents me from buy [sic] any skin care products. It wasn't til [sic] after I filed an IRR that medical brought me some antibiotic ointment for the open sores, but is still doing nothing to prevent 'dry skin conditions' from reacuring [sic]. When the medical personal [sic] came seen [sic] me about my IRR he said one of the reasons that they can't give me anything for it is cause [sic] ad-seg personal [sic] won't allow them to give out a lot of creams and such. But ag-seg staff tells me that if medical will give it out we can pretty much have it. . . All I'm asking is that I be given or allowed to purchase something for my dry skin . . . .

Doc. 20, Ex. 21 at 2-3. Plaintiff appealed the denial of this grievance.

With regard to his dry, cracked, and bleeding skin, plaintiff not only complained about the medical treatment he received from "Nurse Terry," but he complained about the fact that he was not allowed to have creams or lotions to treat his dry skin while he was in administrative segregation. He complained that there was a housing policy that prevented him from purchasing creams or lotions, and that he was given the run around, in that medical personnel stated they could not give out creams and lotions in administrative segregation, while the administrative segregation staff told plaintiff that medical personnel could give out creams and lotions. Defendant Phillips's assertion that no one would read plaintiff's grievances and understand them to have anything to you with prison staff withholding hygiene supplies is disingenuous at best. Plaintiff plainly wrote in the grievance related to his dry skin: "All I'm asking is that I be given or allowed to purchase something for my dry skin." Id.

In his response memorandum, plaintiff argues that defendant Phillips appears to be making the argument that plaintiff failed to exhaust his administrative remedies as to Phillips because plaintiff did not refer to him by name in his IRR. Citing a previous decision by this Court, Taylor v. Bailey, 2014 WL 2968808, at *4 (E.D. Mo. July 1, 2014), plaintiff argues that naming a prison official by name is not necessary to meet the exhaustion requirement under the PLRA.

In his reply, defendant Phillips states that he is not making the argument that he must be specifically named in plaintiff's grievance, rather he asserts his argument is that plaintiff failed to seek or exhaust any administrative remedies involving conduct by him. Plaintiff, however, did file an IRR, grievance, and grievance appeal regarding a supposed policy in administrative segregation prohibiting lotions and creams – in other words, personal hygiene supplies. In his First Amended Complaint plaintiff alleges that defendant Phillips was the Function Unit Manager at ERDCC and

was responsible for ensuring that plaintiff received adequate hygiene supplies. In his motion, defendant Phillips does not deny that he carried such responsibility, but rather bases his motion on the argument that plaintiff failed to raise the issue of the availability of hygiene supplies in his IRR, grievances, or grievance appeals – a fact that is simply not supported by the record. The Court finds defendant Phillips's motion to dismiss for plaintiff's alleged failure to exhaust his administrative remedies is without merit.

Accordingly,

**IT IS HEREBY ORDERED** that defendants Dave Dormire, Terry Russell, and Troy Steele's motion to dismiss is **DENIED.** [Doc. 29]

**IT IS FURTHER ORDERED** that defendant Dale Phillips's motion to dismiss is **DENIED.** [Doc. 31]

**IT IS FURTHER ORDERED** that plaintiff's pro se motion for clarification is **DENIED as moot.** [Doc. 8]

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this <u>12th</u> day of December, 2017.